IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**ROBERT A. ALLEN,**
    **Plaintiff,**

v.                                                       No:  1:06cv80/MP/MD

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
    **Defendant.**

_____

**REPORT AND RECOMMENDATION**

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Allen's applications for childhood disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

      Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff filed applications for childhood disability insurance benefits and for SSI benefits, which were denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), and a hearing was held on July 27, 2004, at which plaintiff was represented by counsel and testified. A vocational expert also testified. The ALJ rendered an unfavorable decision on November 18, 2004 (tr. 14-21), and the Appeals Council declined review (tr. 4-7), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had not engaged in substantial gainful activity at any relevant time; that he had severe affective disorder and personality disorder which did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that his claims concerning the extent of his disability were not totally credible; that he was a younger individual with high school equivalence but no transferrable skills; that he had the residual functional capacity to work with mild to moderate limitations on his ability to understand, remember and carry out detailed instructions, mild to moderate limitations on his ability to maintain attention and concentration for extended periods, and mild to moderate ability to work in coordination with coworkers and the public, and was therefore limited to simple, repetitive tasks with only occasional contact with coworkers and the public; that there were jobs in the national economy that he could perform within his limitations; and that he was not disabled as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence.  *Falge, supra*.  The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles.  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).  In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps.  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

The issue raised in this appeal relates solely to plaintiff's mental health. The ALJ found, and plaintiff does not dispute, that plaintiff has no exertional or other physical limitations. Accordingly, the following summary of plaintiff's medical history will be limited to the mental health issue.

In January 1993 plaintiff came under the care of Philip K. Springer, M.D. for depression. He was treated with medication. Then, in April 1993, the then 15 year old plaintiff took a large number of his father's prescription pills in an apparent "suicide gesture" after arguing with his father during the previous four days (tr. 144, 156). He was hospitalized overnight and diagnosed with maladjustment disorder

with depressed mood. He was recommended to a child psychiatrist. Plaintiff repeated this behavior in December 1993 (tr. 138-43).

He continued under Dr. Springer's care with medication and outpatient counseling through early 1994 (tr. 266-290). Beginning in March 1994, Dr. Springer reported that plaintiff was doing worse (tr. 257-63), but by the end of April 1994 plaintiff was apparently doing better, because Dr. Stringer noted that "[t]here is a sharp upturn in general mental health in relation to prior sessions." (Tr. 255). Dr. Stringer's reports were essentially unchanged for the next five years. He consistently noted that there had been a "sharp upturn," a "marked improvement," or similar term, in plaintiff's mental health (tr. 212-254). Plaintiff had issues with school and family, he was treated with lithium for bipolar disorder, but was encouraged to stay in school (*id*.). Indeed, on May 24, 1999 Dr. Springer noted that "[m]entally, he is getting along very well." (Tr. 212). Among Dr. Springer's recommendations (the others being to stay on medication and continue group therapy), was "continue school." (Tr. 213).

Almost a year later, without having seen the plaintiff in the interim, Dr. Springer noted that plaintiff needed improvement, did not feel any different, realized that his mental health was high and doing very well, was sleeping well and had high productivity (tr. 210). He further noted that plaintiff's "[o]verall mental health has improved significantly from prior reports." (*Id*.). As his "Social/Vocational" assessment, Dr. Springer opined, for the first time, that plaintiff "is totally disabled due to major depressive disorder." (*Id.*). For the rest of 2000 plaintiff's condition was essentially unchanged (tr. 179-210). By December 2000 Dr. Springer noted that plaintiff had "very good mental health," that there were problems that may require individual therapy or evaluation for group therapy, that biologic functions (sleep and mood) and social functions (work and perspective) were balanced, and that

plaintiff's overall mental health had improved significantly from prior reports. Still, plaintiff was totally disabled due to major depressive disorder (tr. 179).

A month later, plaintiff was considering work but "continue[d] with excuses." (Tr. 177). Plaintiff reported anger and thinking he might explode in the workplace. He felt worse, but could settle resentments. His sleep needed improvement. At the same time, his biologic and social functions were balanced. Dr. Springer felt that there had been "a drastic worsening in mental health compared to what [plaintiff] has experienced lately." (Tr. 178). Five days later, on January 15, 2001, plaintiff's condition was unchanged.

Plaintiff next saw Dr. Springer a year later, on January 14, 2002. Plaintiff reported that he felt "slightly worse than he used to," but he "seem[ed] to feel both a high amount of spiritual values and a better mental health." (Tr. 173). Plaintiff slept badly, but biologic and social functions were balanced. His daily chores were well above other values of the mental status, possibly indicating emergence from depression. Dr. Springer felt that his own view of plaintiff's mental health was higher than plaintiff's view, that plaintiff was doing extremely badly in reference to prior reports, and that he was totally disabled due to major depressive disorder (tr. 173-74). There is no record that plaintiff has seen Dr. Springer since.

Plaintiff did make another apparent attempt at suicide on January 30, 2002 by overdosing on his prescribed medications "due to his parents giving him grief." (Tr. 297, 304). The hearing before the ALJ was held 18 months later, in July 2004, with no intervening treatment by Dr. Springer. Plaintiff was seen in a local clinic during that lengthy period, and usually reported that he was doing well and that his medication was keeping him stable (tr. 45, 57, 65, 67, 69, 71, 89), except when he was not taking his medication (tr. 475). On March 15, 2004, three months before the hearing, he reported that he was doing well (tr. 451). Two months later plaintiff reported that he was not feeling well, and was depressed (tr. 439).

On August 12, 1999, a full five years before the hearing, plaintiff was examined by Andres Nazario, Jr., Ph.D, a psychologist, at the request of the state Office of Disability Determinations. At that time plaintiff was 21 years old. He gave a history of working at different jobs for short periods, and that he was able to clean house, wash dishes, do laundry, and mow the lawn. He did not get as angry as he did previously, but was not happy. He had a GED, and had started college, but dropped out because he could not stand the pressure. On examination plaintiff was somewhat depressed and very anxious. The examination was otherwise unremarkable. Dr. Nazario's diagnosis was Major Depressive Disorder, Severe. Plaintiff's prognosis for recovery was good if he followed through with Dr. Springer. Dr. Nazario did not feel that plaintiff could face the stress of securing and sustaining gainful employment (tr. 157-60).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to give proper weight to the opinions of the treating and examining physicians, and that plaintiff was disabled from his onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

The issue presented here is straightforward. Dr. Springer believed that plaintiff was totally disabled, and Dr. Nazario felt that plaintiff could not face the stress of securing and sustaining gainful employment. Plaintiff says that these opinions, particularly the opinion of Dr. Springer, who treated plaintiff for nearly ten years, should have been given great or controlling weight. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or

substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 C.F.R. § 404.1527(d)(1); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385

F.Supp.2d 1245, 1255 (M.D.Fla. 2005). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241. Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

A.  Dr. Springer.

The ALJ held that Dr. Springer's opinion was entitled to little weight for two reasons (tr. 17). First, the ALJ found that Dr. Springer's opinion was not supported by his own treatment records. As the foregoing summary of plaintiff's medical history shows, there were very long periods when plaintiff was doing well, including the five year span between April 1994 and May 1999. A year later, in April 2000, without any intervening treatment, plaintiff was suddenly found to be totally disabled (tr. 210). When read as a whole, Dr. Springer's records show that plaintiff generally did well, particularly when he took his medication, and that although he was encouraged to stay in school and to find employment, he made excuses (tr. 177). The ALJ did not err in holding that Dr. Springer's treatment records did not support his opinion that plaintiff was disabled.

The second reason the ALJ gave for not giving Dr. Springer's opinion significant weight was that it was not a medical opinion. The opinion by a treating physician that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims. The Commissioner's regulations and the

---

[1] *MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner. Title 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion. See also Title 20 C.F.R. § 416.927(e). Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner. Title 20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance"). Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record. SSR 96-5p. In *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do *any* work, and the physician subsequently wrote a letter saying the claimant was completely disabled.

      To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical or mental condition, but also with an understanding of the nuances of how the regulations analyze limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion or lack of exertion relevant to types of work, and similar matters. Moreover, a physician's opinion on whether a person is able to

work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and other factors.  These things are not properly considered by the Commissioner in determining disability.  Title 20 C.F.R. §§ 404.1566, 416.966.  For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.  The reasons given by the ALJ in giving Dr. Springer's opinion little weight were explicit and adequate, and were supported by substantial record evidence.

    B.    <u>Dr. Nazario.</u>

The ALJ also rejected the opinion of Dr. Nazario that plaintiff could not face the stress of securing and sustaining gainful employment.  He noted that Dr. Nazario's opinion was not supported by his objective findings because he noted that plaintiff seemed only somewhat depressed, that he had seen plaintiff only once, and that he did not have the benefit of new medical evidence.  The first two reasons are self-evident.  As to the third, the record shows that plaintiff did well when he took his medication, and during the entire time he was being seen in the local clinic, from early 2002 until just before the hearing, plaintiff reported that he was doing well.

Plaintiff further contends that the ALJ improperly considered the opinions of the state agency physicians.  In August 2002, a state agency psychologist opined that plaintiff had "mild" restrictions of activities of daily living, "moderate" difficulty in maintaining social functioning and "moderate" difficulty in maintaining concentration, persistence, or pace (tr. 425).  He noted that although plaintiff had some difficulty with concentration and persistence at times, he was cognitively functionally intact (tr. 427).  The ALJ acknowledged that this opinion, and a previous state agency opinion, were from non-examining sources and thus, as a general rule, did not deserve as much weight as opinions of examining or treating physicians.

However, the ALJ correctly noted that they did deserve some weight, particularly in this case, where the opinions of the treating and examining physicians were so at odds with the entire record (tr. 17).  See SSR 96-6p (findings of fact made by state agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of non-examining sources).

Moreover, the ALJ noted plaintiff's own description of his daily activities, which were extensive.  Plaintiff was 26 years old, was able to do laundry and dishes, take care of his father and drive him to the VA hospital; plaintiff's mental state was controlled when he took his medication; he had never been given any in-patient treatment; and he had no symptoms of debilitating depression (tr. 18).  Based on these findings, the ALJ determined that plaintiff could do work that was available in the national economy that was limited to simple, repetitive work, and a vocational expert confirmed that such work existed in substantial numbers.  The ALJ's determination that plaintiff was not disabled was supported by substantial record evidence, and plaintiff is not entitled to reversal.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.


At Pensacola, Florida this 26th day of October, 2007.



/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**